## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AUDRA R. BESTER,                             Case No. 1:18-cv-156
     Plaintiff,                             Dlott, J.
                                  Litkovitz, M.J.

     vs.

COMMISSIONER OF                              **REPORT AND**
SOCIAL SECURITY,                             **RECOMMENDATION**
     Defendant.

Plaintiff Audra R. Bester brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 9), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply (Doc.

16).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in June 2014, alleging disability since

October 11, 2011, due to problems with the vertebrae in her neck and lower back, arthritis, and

myalgia. The applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ")

Peter Jamison. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing

on January 6, 2017. On February l, 2017, the ALJ issued a decision denying plaintiff's

applications. This decision became the final decision of the Commissioner when the Appeals Council denied review on January 2, 2018.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 11, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*) [].
>
> 3. The [plaintiff] has the following severe impairments: weight disorder (obesity); lumbar spine disorder; cervical spine disorder; knee impairment (right knee); wrist impairment (bilateral wrists); sleep disorder (sleep apnea); respiratory system disorders; circulatory system disorders (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could push and pull foot controls with both feet occasionally and she could push and pull hand controls with both hands occasionally. She could climb ramps and stairs occasionally; she could never climb

ladders, ropes, or scaffolds. She could stoop, kneel, crouch, and crawl occasionally; she could reach overhead with both arms occasionally; she could finger and feel with both hands frequently; she could never be exposed to extreme cold, extreme heat, or humid or wet working conditions or vibration. She would need to avoid concentrated exposure to dusts, odors, fumes, and pulmonary irritants. She could never be exposed to unprotected heights or hazardous moving mechanical parts. She could operate a motor vehicle occasionally. She could tolerate no more than ordinary and routine changes in work setting and duties.

6. The [plaintiff] is capable of performing past relevant work as a data entry clerk, DOT 203.582-054, semi-skilled (SVP-4) and sedentary in exertional demands; as an administrative clerk, DOT 219.362-010, semi-skilled (SVP-4) and light in exertional demands; and as a telemarketer, DOT 299.357-014, semi-skilled (SVP-3), sedentary in exertional demands. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 11, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 14-27).

### C.    Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[1] The ALJ made an alternative Step 5 finding, relying on the VE's testimony to find that plaintiff would also be able to perform the requirements of representative light, unskilled jobs such as cashier, with 861,000 jobs in the national economy; merchandise marker, with 290,000 jobs in the national economy; and router, with 55,000 jobs in the national economy. (Tr. 26, 384-85).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Medical Records and Opinions**

1. <u>University of Cincinnati Internal Medicine and Pediatrics</u>

Plaintiff was seen at the University of Cincinnati Internal Medicine and Pediatrics (UCIMP) on September 6, 2013 to establish care. (Tr. 702). She complained of right arm, knee, and lower back pain. (Tr. 703-04). Her neck pain radiated down the back of her arm and down the lateral side and was associated with intermittent numbness and tingling, which she reported lasted for hours and resolved with walking, massaging, or NSAIDS. She experienced weakness of her right hand, making it hard to write and hold heavy pots. (Tr. 703). As to her bilateral knee pain, plaintiff reported her pain was greater on the right with the right knee giving out, but

no popping. She described the pain as constant and dull, extreme in severity, and sometimes burning in quality. She reported that the pain had been ongoing for years with worsening over the last year. She reported relief with Meloxicam, Tramadol, and Percocet. Her pain was better with heating pads and worse when sitting still and waking from sleep. Her lower back pain had been ongoing for four years and improved with leaning over and shifting positions. It was not as severe as the knee pain, which was dull, constant, and flares to sharp. Plaintiff reported back pain radiating down the right leg and numbness and tingling in both legs, right greater than left. (Tr. 704). On examination, Lindsay Young, M.D, found bilateral tenderness of plaintiff's knees without swelling, erythema or warmth. She was neurologically intact and grip strength was 5/5. She was 5' 5.5'' tall with a weight of 237 pounds. (Tr. 706). Dr. Young ordered numerous diagnostic tests. (Tr. 707).

A September 2013 MRI of plaintiff's cervical spine showed multilevel degenerative changes worse at C5-C6 and C6-C7, mild central canal stenosis and foraminal narrowing, no significant cord compression, and subtle decreased T1 signal within the bone marrow, mildly heterogeneous. (Tr. 709-10). September 2013 x-rays of the left knee showed minimal medial compartmental arthrosis. A right knee x-ray revealed minimal medial compartment arthrosis and fibroxanthoma noted in the distal right femur. (Tr. 717-18). X-rays of the lumbar spine showed minimal anteriorlisthesis of L4 on L5 and moderate lower lumbar facet arthropathy worse at L5-S1. Minimal degenerative disc disease was noted. (Tr. 718-19). On September 27, 2013, an MRI of the right knee demonstrated a small segment partial thickness cartilage defect posterior aspect lateral tibial plateau with associated focal subchondral marrow edema; intact ligaments and menisci; and multiple small ganglion. (Tr. 783-84).

6

Plaintiff was seen by Dr. Young at UCIMP for follow-up of her "multiple medical problems" on November 8, 2013. (Tr. 801-04). Plaintiff's hypertension was well-controlled with lisinopril. Physical examination revealed diffuse midline cervical tenderness and lumbar tenderness. Plaintiff displayed no muscle spasms and no significant SI joint dysfunction. On neurological examination, she had no gross sensory deficits, normal muscle tone, and 5/5 strength of the upper and lower extremities. (Tr. 803). Dr. Young ordered physical therapy for knee and lower back pain. (Tr. 801).

In April 2014, plaintiff complained of trouble sleeping and was concerned she may have sleep apnea. (Tr. 915). She was found to be neurologically intact. Plaintiff had a slight limp and difficulty getting up. (Tr. 919). A polysomnography was scheduled (Tr. 920), and in May 2014 she was diagnosed with obstructive sleep apnea (Tr. 1200, 1204).

On June 2, 2014, plaintiff presented to UCIMP with complaints of bilateral knee pain. She reported her pain had been going on for years but was getting worse and making it difficult to get around. She felt a "burning" sensation in both knees that got worse when she was up walking. She reported her pain was worse after prolonged sitting, and her right knee hurt worse than the left knee. Plaintiff also reported that pain along with numbness and tingling radiated from her low back down her leg to her foot on the right side and on the left side radiated from her knee down to her foot. She also complained of low back pain. (Tr. 1001). On examination, plaintiff's lumbar spine was nontender and she exhibited no pain on active flexion. There was some mild pain with radiation down the legs on extension. She exhibited positive straight leg raise on the right. (Tr. 1003). Plaintiff was referred to physical therapy to evaluate and treat her low back pain with radiculopathy, and an MRI was ordered. (Tr. 1004).

7

The MRI of the lumbar spine taken on June 11, 2014, showed mildly heterogeneous bone marrow signal that was likely within normal limits, normal vertebral body height, and normal alignment.  (Tr. 1048).  At L3-L4, there was a minimal diffuse disc bulge and moderate bilateral facet hypertrophy; mild to moderate ligamentum flavum hypertrophy; and no significant spinal canal or neural foraminal narrowing.  At L4-L5, there was a moderate diffuse disc bulge with moderate to severe bilateral facet hypertrophy; mild to moderate ligamentum flavum hypertrophy causing mild to moderate right and mild left neuroforaminal narrowing; and mild spinal canal narrowing with an AP diameter of 11 mm.  At L5-S1, there was moderate to severe bilateral facet hypertrophy and no significant neuroforaminal or spinal canal narrowing.  (Tr. 1048).

An August 2014 visit at UCIMP indicated plaintiff's lower back pain was improved with an adjustment of Tylenol dosing from her last visit.  October 2014 progress notes from UCIMP show plaintiff's obstructive sleep apnea was controlled and restless leg syndrome treatment was deferred.  (Tr. 1234-35).

On November 24, 2014, a physical examination at UCIMP showed lumbar midline tenderness, generalized tenderness in the medial and lateral joint line and patella, minimal swelling, and no redness or erythema of the right knee.  Plaintiff exhibited decreased range of motion due to pain, with extension to 165 degrees and flexion to 75 degrees.  Plaintiff's examination was limited due to pain and decreased range of motion, but there was no obvious ligamentous injury or meniscal injury.  (Tr. 1266).  Plaintiff's gait was antalgic, favoring the right side.  Plaintiff was tearful at times during the examination.  (Tr. 1267).  A splint was ordered for carpel tunnel syndrome of the right wrist.  Plaintiff's medications for knee and back

8

pain were adjusted, and she was instructed to continue with home exercises and heating pad use. (Tr. 1267-68).

Plaintiff visited the University of Cincinnati Orthopedic Outpatient Clinic in December 2014. Plaintiff reported that she benefited from medication for her back pain. She stated she had been to one physical therapy session and was scheduling a second session. An epidural had been scheduled for her back pain. On physical examination, she was "smiling and sitting comfortably in [the] chair," and she exhibited lumbar paraspinal musculature hypertonicity with diffuse tenderness to palpation. (Tr. 1344). Her medications were adjusted, and she agreed to continue with physical therapy. (*Id*.). Plaintiff received an epidural steroid injection on December 24, 2014. (Tr. 1383).

Plaintiff was seen by Dr. Young at UCIMP in May 2015. Her physical exam revealed 5/5 muscle strength bilaterally in the lower extremities, including knee flexors, knee extensors, ankle dorsiflexors, ankle plantar flexors, and hip flexors. Plaintiff had a negative straight leg test and forward flexion limited to 20 degrees. Plaintiff had minimal lateral bend or rotation due to pain inhibition. Plaintiff requested an increase in Gabapentin dosage. She reportedly was in chronic pain management with multiple areas of pain in the upper and lower extremities. Plaintiff reported her pain continued to wax and wane in severity, and she was followed in the orthopedic clinic for lower back pain only. There was no current plan for further injections due to limited relief. Plaintiff's hypertension was reported as well-controlled on medication. (Tr.1472-77). Plaintiff had a follow-up appointment in May 2015 after receiving epidural injections, and she began using a TENS unit for 12 hours a day. (Tr. 1470-71).

Plaintiff saw Merranda Holmes, M.D., at UCIMP on July 21, 2015.  At that time, plaintiff had finished with physical therapy and stated it "helped some; still doing some of the exercises." (Tr. 1502).  On examination, Dr. Holmes found no tender point pain over the cervical spine or thoracic spine, mild diffuse tender point pain over the entire lower back (not just spine), no palpable muscle tears, and decreased flexion and extension.  Plaintiff did not appear to be in significant pain and there was no pain with straight leg raise.  Plaintiff had no decrease in sensation, and her strength appeared appropriate but limited by pain.  (Tr. 1504).  Dr Holmes stated that she would not write a work exemption at that time given that it was their first visit. Dr. Holmes reported that plaintiff could likely work despite pain, at least part time, "given she is very young and otherwise functional, not using a cane, etc." (Tr. 1505).  Dr. Holmes and plaintiff discussed weight loss to help her low back pain.   Plaintiff reported that she could not exercise, she could not afford water therapy, and she did not want to go to an outdoor pool.  Dr. Holmes suggested the YMCA, but plaintiff did not want to do that.  (Tr. 1505).  Dr. Jacobs at UCIMP reported in an addendum that same day that plaintiff was seen by physical therapy in April and was "very fixated on not being able to work."  (Tr. 1501).

In September 2015, Dr. Holmes gave plaintiff a referral to neurosurgery "given that she claims she is completely unable to work.  She is very young, and may benefit from intervention if indicated."  (Tr. 1517).

Plaintiff visited Dr. Holmes again in November 2015.  Plaintiff reported she had not worked in many years due to back pain, and Job and Family Services had exempted her from work until November 15th.  That exemption was expiring, and plaintiff wanted the exemption from work "for life."  (Tr. 1523).  On physical examination, plaintiff had mild tenderness to

10

palpation on her lumbar spine, more pain with extension of her spine, no crepitus, warmth, erythema, or swelling, and no sensory deficits. Plaintiff's lower extremity reflexes were intact. (Tr. 1524).

In December 2015, plaintiff was examined by Dr. Danielle Weber, M.D., at UCIMP. (Tr. 1528). Plaintiff reported that she went for a physical therapy evaluation but was told she did not "need further treatment as she already knows what to do." (*Id.*). She was using a cane as recommended by physical therapy. On physical examination, plaintiff had normal range of motion of the neck; her right knee had good range of motion with pain; and she exhibited no joint effusion and a negative valgus test, varus stress test, and Lachman's test. (Tr. 1530). Dr. Weber noted no new features to back pain and directed plaintiff to continue her current pain regimen and home physical therapy exercises. When plaintiff informed Dr. Weber that disability paperwork would be sent to the office, she "[r]einforced her PCP's message that [she] would prefer patient to continue to be active and work." (Tr. 1531).

Plaintiff was again examined by Dr. Holmes in February 2016. (Tr. 1535). On examination of the back, plaintiff displayed no erythema or warmth, her flexion and extension of the lower spine was limited but no worse than usual, and her gait was normal for her habitus. Plaintiff's neurological exam was intact. (Tr. 1535). Plaintiff reported she had been to water physical therapy which helped, but she did not want to do non-aquatic therapy. She refused steroid injections and had some sciatic pain. (Tr. 1536). Dr. Holmes reported that plaintiff "states she adamantly wants to continue pursuing lifetime disability." (*Id.*).

On June 23, 2016, Dr. Anjali Pearce from UCIMP completed a questionnaire in which she reported she had only seen plaintiff on May 3, 2016 and June 23, 2016. Plaintiff had been a

patient at her practice since September 2013. Dr. Pearce noted that plaintiff suffered from pain in her back, bilateral knees, upper arms, and neck and was chronically fatigued. (Tr. 1543). Functionally, Dr. Pearce believed that plaintiff could sit for forty-five minutes before needing to get up, stand for fifteen minutes at one time before needing to change positions, stand/walk less than two hours in an eight-hour workday, walk one city block without rest or severe pain, and sit about two hours in an eight-hour workday. (Tr. 1545). Dr. Pearce also opined that plaintiff would need periods of walking around during an eight-hour working day every thirty minutes for ten minutes each time. She further opined that plaintiff would need to shift positions at will from sitting, standing or walking; take unscheduled breaks every ten to fifteen minutes for thirty minutes; and elevate her legs higher than her heart sixty percent of the time. (Tr. 1545-46). Dr. Pearce stated that plaintiff could rarely lift less than ten pounds and never lift anything heavier. She could rarely climb stairs and never twist, stoop (bend), crouch, and climb ladders. (Tr. 1546). Dr. Pearce opined that plaintiff could use her hands for only five percent of the time and use her fingers for only twenty percent of the time during an eight-hour workday. (Tr. 1547). She concluded that plaintiff would likely be absent from work more than four days per month. (*Id.*).

### 2. Drake Center, Inc.

Plaintiff underwent a physical therapy evaluation at the Drake Center in January 2014. (Tr. 1094). Plaintiff was assessed to have low back pain and bilateral knee pain at a 4-10/10. She had decreased trunk range of motion and decreased bilateral lower extremity strength assessed at 3-4/5. She was unable to complete a 6-minute walk test due to pain. Aquatic therapy and physical therapy were initiated. (Tr. 1095).

12

Plaintiff was re-evaluated on July 9, 2014, at which time plaintiff reported non-compliance with aquatic program due to recent deaths. She also reported losing her home exercise papers. (Tr. 1142). During the exam, plaintiff exhibited limited flexibility, and she complained of tingling in her right thigh. She exhibited tenderness to palpation over the lumbar paraspinals. She was able to walk a distance of 819 feet in 6 minutes without assistance, but she needed a couple of breaks. Her gait was mildly antalgic by the end of the walk. (Tr. 1143).

On August 27, 2014, plaintiff was discharged from land-based physical therapy due to limited progress. The physical therapist noted that plaintiff did better with aquatics and it was recommended that she continue on her own via community aquatic wellness. (Tr. 1181).

### 3. State Agency Review

In September 2014, after reviewing plaintiff's file, state agency physician Rachel Rosenfeld, M.D., opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. (Tr. 402-03). Dr. Rosenfeld found that plaintiff would be limited to occasional climbing of ramps/stairs and could never climb ladders, ropes, or scaffolds. (Tr. 403). Dr. Rosenfeld also found that plaintiff should avoid all exposure of hazards such as unprotected heights and machinery. (Tr. 404).

Rannie Amiri, M.D., reviewed plaintiff's file upon reconsideration in January 2015 and affirmed Dr. Rosenfeld's exertional and environmental limitations. (Tr. 438-40). In addition, Dr. Amiri found that that plaintiff would be limited in her ability to push and/or pull in her right upper extremities, and she was limited to "frequent" use of her upper right extremities to operate hand controls. (Tr. 439). Dr. Amiri also found that plaintiff would be limited to occasional

13

crawling; frequent climbing of ramps/stairs, stooping, kneeling, or crouching; and no climbing of ladders, ropes, or scaffolds. (Tr. 439).

### E. Specific Errors

On appeal, plaintiff argues that the ALJ erred by: (1) failing to give controlling weight to her treating physician, Dr. Pearce, by failing to provide "good reasons" for discounting a conclusion of disability from a treating source as required by 20 C.F.R. §1527(d)(2); (2) failing to fully develop the record as required by 42 U.S.C. §423(d) and relevant Social Security Regulations; (3) failing to assess plaintiff's residual functional capacity based on all of the relevant evidence; and (4) submitting additional evidence into the record without affording notice to plaintiff as required by HALLEX I-2-7-1. (Docs. 9 and 16).

### 1. Weight to the treating source opinions

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Medical opinions from treating sources are generally afforded more weight than those from non-treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

14

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must weigh the factors specified in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to decide what weight to give the opinion; specifically, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Gayheart*, 710 F.3d at 376. *See also Shields v. Comm'r of Soc. Sec*., 732 F. App'x 430, 437 (6th Cir. 2018) (citing *Wilson*, 378 F.3d at 544) (emphasis added); *see also Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527[(c)]"). The ALJ's decision "must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). This requirement serves two purposes: (1) "it helps a claimant to understand the disposition of her case, especially 'where a claimant knows that his physician has deemed him disabled,'" and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Shields*, 732 F. App'x at 438 (citing *Wilson*, 378 F.3d at 544). The Sixth Circuit has made clear that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and when the ALJ has not "*comprehensively* set forth the reasons for the weight assigned to a treating physician's opinion." *Id.* (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (emphasis added).

15

The ALJ acknowledged the specific factors that the Social Security Administration must consider in assessing a treating physician's opinion, as well as the duty to clearly articulate the reasons for the weight given to the opinion.  (Tr. 24-25, citing 20 C.F.R. § 404.1527 and *Wilson*, 378 F.3d at 544).  The ALJ gave "some weight" to Dr. Pearce's medical assessment, finding it was not consistent with the findings upon examination of the other treatment evidence.  (Tr. 25).[2] The ALJ also found that Dr. Pearce only examined plaintiff on two occasions, and her treatment notes were not in the record to support her conclusions of less than sedentary functional abilities. (*Id.*).  The ALJ further determined that Dr. Pearce's assessed limitations appeared to be based on plaintiff's subjective complaints rather than clinical and diagnostic findings.  (*Id.*).

Plaintiff contends the ALJ failed to give "good reasons" for the weight he afforded Dr. Pearce's opinion that plaintiff was only capable of less than sedentary work.  Dr. Pearce was a physician at UCIMP, the practice at which plaintiff obtained her treatment from 2013 to 2016. Plaintiff alleges the physicians at UCIMP were "actively involved in Ms. Bester's treatment for back pain, knee pain and sleep apnea since 2013" and "oversaw her referrals and prescriptions for these conditions."  (Doc. 9 at 9).  Plaintiff contends that the ALJ's criticism that Dr. Pearce only saw plaintiff two times before rendering her medical assessment ignores the fact that Dr. Pearce was a physician in a large medical practice and had access to all of plaintiff's medical history and records, including the diagnostic studies performed by UCIMP physicians.  (*Id.*).  In terms of consistency with the other record evidence, plaintiff contends that Dr. Pearce's opinion is consistent with the opinion of Dr. Amiri, the state agency physician who opined that plaintiff

---

[2] The ALJ gave "little weight" to Dr. Pearce's diagnosis of fibromyalgia (Tr. 24), and plaintiff does not appear to contest this finding.

had manipulative limitations with respect to handling (gross manipulation) with her right hand (Tr. 426) and fingering (fine manipulation) with respect to the fingers on her right hand. (*Id.* at 10, citing Tr. 426, 427).

The ALJ gave valid reasons for affording Dr. Pearce's opinion less than "controlling" weight and only "some" weight, and those reasons are substantially supported by the evidence. The ALJ reasonably concluded that Dr. Pearce's opinion was based largely on plaintiff's subjective complaints and not the clinical and diagnostic findings of record. Dr. Pearce had little opportunity to treat plaintiff and independently assess her before providing her medical assessment of plaintiff's functional abilities. Dr. Pearce reportedly examined plaintiff only twice over the course of two months before she issued her assessment. (Tr. 1543). It was reasonable for the ALJ to consider that Dr. Pearce assessed plaintiff's functional limitations based on two appointments only and without first-hand longitudinal knowledge of plaintiff's conditions. In addition, and as discussed below in connection with plaintiff's second assignment of error, the ALJ noted that Dr. Pearce's treatment records were not in Social Security's file at the time the ALJ rendered his decision.[3] Therefore, there was no indication that she made any independent diagnoses of plaintiff's condition or further testing to support her extreme opinion. This was a valid factor for the ALJ to consider in weighing Dr. Pearce's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (considering factors of length, nature, and extent of treatment relationship).

---

[3] Plaintiff cites to Dr. Pearce's notes from May and June 2016, which were not in the record before the ALJ but were submitted to the Appeals Council after the ALJ denied plaintiff's claim. The Court may not consider this evidence in its substantial evidence review as the Court is limited to reviewing the record evidence before the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

Further, the ALJ reasonably determined that the less than sedentary functional abilities assessed by Dr. Pearce were not consistent with the "findings upon examination of the other treatment evidence." (Tr. 25). The ALJ thoroughly reviewed the evidence from UCIMP, where plaintiff saw Dr. Pearce and was treated by other physicians since September 2013. (Tr. 20-24). The ALJ considered the progress notes, MRI and x-ray evidence, sleep study, and physical therapy notes cited by plaintiff, who argues that this is "objective evidence upon which Dr. Pearce could base her conclusions." (Doc. 9 at 10). As the Commissioner points out, even if this evidence could support a conclusion contrary to that drawn by the ALJ, as long as there is substantial evidence to support the ALJ's decision, the Court must defer to the ALJ's conclusion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). More importantly, when asked to "[i]dentify the clinical findings and objective signs" that support her opinion, Dr. Pearce declined and failed to cite any such evidence in support of her conclusions. (See Tr. 1544, Question 6). The ALJ's review of the UCIMP evidence showed some abnormalities on clinical examination and objective testing, but in large part those findings were within normal limits. The ALJ also noted that there was a difference of opinion among plaintiff's own treating medical providers as to her abilities and desire for "an exemption from work 'for life'" and for "lifetime disability." (Tr. 23, 24, citing Tr. 1501, 1517, 1534, 1536). Nor has plaintiff explained how those records support Dr. Pearson's opinion or showed that the ALJ committed reversible error. The ALJ reasonably discounted Dr. Pearson's opinion for less than sedentary work based on the diagnostic findings and treatment records from other UCIMP providers.

Finally, plaintiff suggests the ALJ erred in discounting Dr. Pearson's opinion on plaintiff's manipulative ability when Dr. Amiri, the state agency physician, gave an opinion

18

consistent with that of Dr. Pearce.  Dr. Amiri opined that plaintiff was limited to "frequent," i.e., one-third (33%) to two-thirds (66%) of an 8-hour workday[4], handling and fingering with her right upper extremity.  (Tr. 426-29).  In contrast, Dr. Pearce opined that plaintiff could use her hands for only 5% of the time and use her fingers for only 20% of the time in an eight-hour workday.  (Tr. 1547).  Contrary to plaintiff's contention, the two physicians' opinions on plaintiff's manipulative ability are not consistent and the ALJ did not err in this regard. Plaintiff's first assignment of error should be overruled.

## 2. Duty to Develop the Record

Plaintiff contends the ALJ committed reversible error when he failed to obtain "readily available" records from Dr. Pearson and relied on the absence of such records in discounting Dr. Pearson's opinion.

A disability claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).  The burden is on the claimant to furnish medical and other evidence about her impairments and the effects of those impairments on her ability to work.  *Id.*  "Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record."  *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).  *See also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x

---

[4] Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

456, 459 (6th Cir. 2008) ("Absent such special circumstances—which do not exist in this case—this court repeatedly affirms that the claimant bears the ultimate burden of proving disability.").

The ALJ did not violate his duty to fully and fairly develop the record in this case. As an initial matter, plaintiff was represented by counsel during the ALJ hearing. Therefore, the ALJ's basic duty to fully and fairly develop the record in this matter did not rise to the heightened duty applicable when a claimant appears during social security proceedings without an attorney or representative. *See Lashley*, 708 F.2d at 1051-52. *See also Trandafir*, 58 F. App'x at 115. In addition, the ALJ gave plaintiff the opportunity to submit additional evidence at the close of the hearing. (Tr. 391). Dr. Pearce rendered her medical assessment of plaintiff's functioning in June 2016, and plaintiff had ample time to submit Dr. Pearce's treatment records before the January 2017 hearing and the ALJ's February 1, 2017 hearing decision but did not do so.

Finally, the record contained sufficient evidence for the ALJ to weigh Dr. Pearce's opinion and reach a decision on plaintiff's disability claim. The ALJ was not required to recontact Dr. Pearce, as plaintiff contends, because the ALJ had ample clinical and objective evidence from the other UCIMP providers to decide plaintiff's disability claim. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (quoting *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.").

In sum, the ALJ adequately developed the record in this case and was under no duty to develop it more fully. Plaintiff's second assignment of error should be overruled.

### 3. RFC and Vocational Error

Plaintiff contends the ALJ erred in formulating her RFC and in relying on the VE's testimony as substantial support at Steps Four and Five of the sequential evaluation process. (Doc. 9 at 12-13). Plaintiff alleges the ALJ's RFC decision fails to incorporate Dr. Pearce's greater exertional restrictions and her opinion that plaintiff would likely be absent from work four to five days per month based on her impairments and treatment.

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). The ALJ is required to incorporate only those limitations that he or she found to be credible. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (same).

Plaintiff's argument is essentially a reformulation of her first assignment of error, which alleges that the ALJ erred in weighing Dr. Pearce's opinion and not incorporating Dr. Pearce's restrictions into the RFC. Because the Court has determined that the ALJ committed no error in weighing Dr. Pearce's opinion, the ALJ was not required to incorporate her restrictions into the RFC finding or the hypothetical questions to the VE. Plaintiff's third assignment of error should be overruled.

### 4. The ALJ's Alleged Failure to Comply with Social Security's Proffer Instructions

Plaintiff contends the ALJ failed to comply with the proffer instructions of the Social Security Administration's Hearings, Appeals and Litigation Law (HALLEX) manual I-2-7-1

when he admitted the Exhibit A section of the evidence, which included the opinions of the state agency physicians, after the administrative hearing without notifying plaintiff. (Doc. 9 at 14). Plaintiff alleges that as a result, plaintiff was denied the opportunity to submit a written statement or to question the authors of the proffered evidence, the opportunity to request a supplemental hearing, and the opportunity to request a subpoena to obtain additional evidence. (*Id*.).

The "Exhibit A" exhibits include the disability determination transmittals and explanations from the initial and reconsideration stages of the disability process and the opinions and RFC assessments of the state agency physicians. (Tr. 394-445). At the outset of the administrative hearing, the ALJ noted that his electronic version of the record did not include "the A section" exhibits. (Tr. 365). Plaintiff's counsel also stated that he had not seen those exhibits. (*Id*.). The ALJ stated he would "follow up on that" and most likely make the A section exhibits a part of the record. (*Id*.). Plaintiff alleges that "at no time during the hearing were [plaintiff] or her attorney able to review the Exhibit A section of the record," and those exhibits were only made part of the record afterwards. (Doc. 16 at 8).

HALLEX I-2-7-1 provides:

> When an administrative law judge (ALJ) receives additional evidence after the hearing from a source other than the claimant or the appointed representative, if any, and the ALJ proposes to admit the evidence into the record, he or she will proffer the evidence to the claimant and appointed representative, if any.

HALLEX I-2-7-1. A proffer gives the claimant an opportunity to review the additional evidence and allows a claimant to "[c]omment on, object to, or refute the evidence by submitting other evidence; or [i]f required for a full and true disclosure of the facts, cross-examine the author(s) of the evidence." *Id.*

The HALLEX "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (quoting HALLEX I–1–0–1). While "HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557, at *9 (W.D. Mich. Sept. 19, 2011) (citing *Bowie*, 539 F.3d at 399); *see also Lawrence v. Colvin*, Civ. A. No. 3:13-032, 2014 WL 640990 at *4 (E.D. Ky. Feb. 18, 2014) ("the HALLEX procedures are not binding on this Court, and do not create procedural due process rights"); *Alilovic v. Astrue*, Case No. 1:12-cv-323, 2012 WL 5611077, at *7 (N.D. Ohio Nov. 15, 2012) (HALLEX is an "internal guidance tool for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law."). Nevertheless, "some courts have granted relief where the procedures were not followed and where the plaintiff demonstrates prejudice from the failure to follow the procedures." *Bailey v. Colvin*, No. CIV.A. 14-104, 2015 WL 428103, at *3 (E.D. Ky. Jan. 31, 2015) (quoting *Lawrence*, 2014 WL 640990, at *4, and citing *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643, at *12 (M.D. Tenn. Jan. 8, 2013) (surveying relevant case law)); *see also Owens v. Comm'r of Soc. Sec.*, No. 14-14109, 2016 WL 4009751, at *3 (E.D. Mich. July 27, 2016) (finding no reversible error where the plaintiff failed to identified any prejudice flowing from the ALJ's failure to follow HALLEX I-2-7-1).

Any alleged failure of the ALJ to follow the HALLEX proffer rules does not constitute reversible error in itself as the HALLEX rules are "not binding on this court." *Bowie*, 539 F.3d at 399. Even if the ALJ failed to comply with the HALLEX, plaintiff fails to establish that the

alleged failure prejudiced her claims such that a reversal and remand of this matter is warranted. Plaintiff's sole argument in this regard is that the ALJ purportedly "focused" on "the opinions of the state agency physicians [the Exhibit A evidence] rather than those of her treating physician" in the hypothetical questions posed to the VE. (Doc. 9 at 14-15). However, any failure to "focus" on the treating physician's opinion cannot be said to be prejudicial as the ALJ's weighing of the treating physician's opinion is supported by substantial evidence for the reasons discussed above.

Moreover, the ALJ did not adopt the state agency physicians' limitations wholesale in assessing plaintiff's RFC and propounding hypothetical questions to the VE, as plaintiff suggests. Although the ALJ gave "some consideration" to the state agency physicians' assessment for light work (Tr. 24), the ALJ did not adopt many of the limitations assessed by the state agency physicians. Rather, the ALJ concluded that a further reduction in postural limitations and exposure to environmental irritants was appropriate to accommodate plaintiff's complaints. (Tr. 24). As a result, the ALJ limited plaintiff to only "occasional" use of hand controls; climbing ramps and stairs; and stooping, kneeling, crouching, and reaching overhead, while the state agency physicians opined that plaintiff was capable of performing these activities "frequently." (Tr. 18, 414, 426). The ALJ limited plaintiff to no exposure to environmental irritants despite the state agency physicians' opinions that plaintiff's exposure to environmental irritants was "unlimited." (Tr. 18, 414-15, 427). The ALJ limited plaintiff to "frequent" feeling with her hands, while the state agency physicians opined that plaintiff was "unlimited" in this area. (Tr. 18, 414, 427). One state agency physician opined that plaintiff had no manipulative limitations with her hands; the other agency physician assessed that plaintiff was limited to

"frequent" fingering with her right hand; and the ALJ limited plaintiff to not only "frequent" feeling with her right hand but with her left hand as well. (Tr. 18, 414, 427). Plaintiff has not explained how she was prejudiced by the ALJ's consideration of the state agency physicians' opinions, which were based on evidence submitted prior to the ALJ hearing that plaintiff already possessed, and by the alleged failure to proffer these opinions.

Lastly, even if the ALJ "focused" on the state agency opinions in propounding hypothetical questions to the VE, plaintiff has still not identified any prejudice. Plaintiff's counsel had the opportunity to, and in fact did, cross-examine the VE on hypothetical questions that were purportedly based, in part, on the state agency physicians' opinions. (Tr. 391). Therefore, a remand for further proceedings would serve no further purpose.

As plaintiff has failed to allege any prejudice resulting from the ALJ's alleged failure to follow HALLEX I-2-7-1, plaintiff's fourth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date:   6/26/19                              *s/Karen L. Litkovitz*
                                             Karen L. Litkovitz
                                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AUDRA R. BESTER,                                    Case No. 1:18-cv-156
     Plaintiff,                                    Dlott, J.
                                                   Litkovitz, M.J.

     vs.


COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).